IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CASMIR GARCZYNSKI, JR. and | : | CIVIL ACTION |
| LAURA GARCZYNSKI, | : | |
|     Plaintiffs, | : | |
| | : | |
|     v. | : | |
| | : | NO. 08-5128 |
| COUNTRYWIDE HOME LOANS, INC. | : | |
| et al., | : | |
|     Defendants. | : | |

### MEMORANDUM RE: MOTION TO DISMISS AMENDED COMPLAINT

**Baylson, J.**                                                                                                     **August 12, 2009**

      Plaintiffs Casimir Garczynski and Laura Garczynski ("Plaintiffs") bring this action against Defendant Countrywide Home Loans Inc. ("Countrywide") in a single count First Amended Complaint under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[1] Plaintiffs allege that Countrywide violated the "catch-all" provision of the UTPCPL, which prohibits fraudulent or deceptive conduct that is likely to create confusion or misunderstanding. Plaintiffs seek damages and injunctive relief. Countrywide moves to dismiss the action under Fed. R. Civ. P. 12(b)(6).

      The Court concludes that Plaintiffs' factual allegations are insufficient to demonstrate

---

[1] Plaintiffs allege that jurisdiction is based on both diversity and federal question. The federal question jurisdiction is purportedly based on alleged violations of the civil federal statutes cited in their Complaint, but these federal statutes are only used to further Plaintiffs' UTPCPL claim. Plaintiffs do not bring any counts under these federal statutes themselves, and for this reason, the Court will consider this case as having been brought under diversity jurisdiction alone. As noted below, the Court will nonetheless consider whether Plaintiffs should be given leave to amend their Complaint to allege violations of these federal statutes, but concludes that such an amendment would be futile.

that they are entitled to relief and that their interpretation of the UTPCPL has been rejected by many other courts.  Although not specifically briefed by the parties, it also appears that any amendment would be futile because Plaintiffs' claims are barred by the parol evidence rule, are untimely, and contravene the specific terms of the written mortgage agreements entered into between Plaintiffs and Defendant.  Although in theory Plaintiffs might be able to bring a common law claim for breach of contract if their claim was that Defendant did not live up to the terms of the agreement, they make no such allegations.

**I.      Factual Background**

Plaintiffs are a married couple residing in Philadelphia.  (Am. Compl. ¶ 9.)  Plaintiffs allege as follows: they visited Sokkie Choing ("Choing"), a mortgage broker at Hanson Mortgage Group, in order to secure a mortgage for their "dream house."  (Am. Compl. ¶¶ 9, 12.)  Plaintiffs told Choing they could afford a monthly mortgage payment between $1,000 and $1,100.  (Am. Compl. ¶ 14.)

Choing told Plaintiffs that an adjustable rate mortgage ("ARM") would be the best choice for them.  (Am. Compl. ¶ 16.)  Plaintiffs allege that Choing told them that their monthly payments for an ARM would be lower than the payment range they had been seeking and that the payments would increase only slightly each year.  (Am. Compl. ¶¶ 17, 18.)  Choing presented Plaintiffs' information to various prospective lenders.  (Am. Compl. ¶ 19.)  Countrywide approved Plaintiffs for an Option-ARM ("the loan").  (Am. Compl. ¶ 20.)  The loan was executed on October 25, 2006.  (Am. Compl. ¶ 8.)

Plaintiffs allege that Choing told them that the loan would have a one-year introductory interest rate of 4% with monthly payments of $900 and that the monthly payments would

increase slightly each year. (Am. Compl. ¶¶ 23-25.) However, the first monthly billing statement showed a minimum payment of approximately $1,300 with an interest rate of 8.65%. (Am. Compl. ¶ 29.)

Plaintiffs allege that they did not discover until they received the first billing statement that the loan contained four payment options, one of which contained negative amortization.[2] (Am. Compl. ¶¶ 27-28.) Plaintiffs could afford to make only the minimum payment on the loan. (Am. Compl. ¶ 30.) In August 2008, the minimum payment option on the loan expired, and Plaintiffs thus were forced to make interest-only payments of approximately $1,700 per month, which was more than they could afford. (Am. Compl. ¶¶ 32-33.)

Plaintiffs allege that the loan is confusing and that it was impossible for them to determine that it contained negative amortization. (Am. Compl. ¶ 36.) They also allege that Countrywide and Choing failed to explain the "true nature" of the loan even though they knew Plaintiffs could not afford more than the minimum payment. (Am. Compl. ¶¶ 38, 43.)

Plaintiffs bring this suit against Countrywide with a single count alleging violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Plaintiffs seek rescission of the loan, termination of security interest in Plaintiffs' property created under the loan, return of all monies Plaintiffs paid to anyone in connection with the loan, statutory damages, forfeiture and return of the loan proceeds, and damages. (Am. Compl. at 8-9.) Countrywide moves to dismiss under Fed. R. Civ. P. 12(b)(6).

---

[2] "Negative amortization occurs when monthly payments are not large enough to cover all the interest cost of a mortgage. The unpaid interest is added to the principal and increases the principal amount of the loan to be repaid." Iwashyna v. GMAC Mortgage Corp., 1994 WL 144319, at *2 (E.D. Pa. Apr. 21, 1994) (Shapiro, J.).

## II. Standard of Review

In ruling on a Fed. R. Civ. P. 12(b)(6) motion, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal citations and quotation marks omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940 (2009) (citing Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1965 (2007)). A court need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1940 (citing Twombly, 127 S. Ct. at 1965). "A formulaic recitation of the elements of a cause of action will not do." Phillips, 515 F.3d at 231 (citing Twombly, 12 S. Ct. at 1959).

## III. Legal Discussion

The UTPCPL, 73 P.S. § 201-1 et seq., "protects consumers of goods and services from unfair or deceptive trade practices or acts," Gardner v. State Farm Fire & Casualty Co., 544 F.3d 553, 564 (3d Cir. 2008), by providing a private right of action for persons who sustain a loss because they were subject to unfair or deceptive trade practices, Hunt v. U.S. Tobacco Co., 538 F.3d 217, 221 (3d Cir. 2008). The UTPCPL lists twenty specifically prohibited practices in § 201-2(4)(i)-(xx), and also contains a catch-all provision in § 201-2(4)(xxi) which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." Hunt, 538 F.3d at 221.

Plaintiffs' UTPCPL claim is essentially twofold.[3] First, Plaintiffs allege that Countrywide "engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding," in violation of the catch-all provision of the UTPCPL, 73 P.S. § 201-2(xxi). Second, Plaintiffs allege violations of several other independent statutes—the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; the federal Home Ownership and Equality Protection Act ("HOEPA"), 15 U.S.C. § 1639; the federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.;[4] and the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.1 et seq. Plaintiffs do not seek relief under these statutes, but cite them only under a theory that violation of these statutes is a per se violation of the UTPCPL.

### A. The UTPCPL's Catch-all Provision

Countrywide argues that Plaintiffs do not allege sufficient facts for their UTPCPL catch-all claim to survive a motion to dismiss. (Def.'s Mot. to Dismiss at 11-12.) In addition, Countrywide contends that Plaintiffs cannot base their UTPCPL claim on misrepresentations made by Choing and that Plaintiffs have not pleaded sufficient facts to support a conclusion that

---

[3] ¶ 52(a) of the complaint alleges that Countrywide misrepresented to Plaintiffs "the character, extent, or amount of the debt or its status in a legal proceeding" in violation of 73 P.S. § 201-3.1 and 37 Pa. Code § 303.3(3). However, § 201-3.1 authorizes the Attorney General to promulgate regulations, and § 303.3(3) no longer exists as it was rescinded by the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA") in 2000. See 31 Pa.B. 2685 (bulletin of the Pennsylvania Office of the Attorney General announcing that § 303.3(3) was repealed).

[4] In a section entitled "Concessins" [sic], Plaintiffs have withdrawn their alleged HOEPA violation and their RESPA violation, insofar as it relates to Qualified Written Requests ("QWR"), as bases for their UTPCPL claim. (Pl.'s Response Brief at 6.)

Choing was an agent of Countrywide. (Def.'s Mot. to Dismiss at 12-15.) Plaintiffs argue that their allegations satisfy the pleading requirements of Iqbal and Twombly. (Pl.'s Rebuttal Brief at 1-3.)

### 1.    Legal Standard for Claims under the UTPCPL Catch-all Provision

The UTPCPL's catch-all provision prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4)(xxi). Courts are divided over the standard for claims under the catch-all provision, and the Pennsylvania Supreme Court has not resolved the question. See Molley v. Five Town Chrysler, Inc., 2009 WL 440292, at *3 (E.D. Pa. Feb. 18, 2009) (Joyner, J.) ("Clearly there is un[c]ertainty within the Circuit as to what type of conduct the 'catch all' provision of the UTPCPL protects.").

Some decisions have required plaintiffs proceeding under the catch-all provision to prove the elements of common law fraud, even when alleging mere deception. See, e.g., Colaizzi v. Beck, 895 A.2d 36 (Pa. Super. Ct. 2006); Rock v. Voshell, 397 F. Supp. 2d 616 (E.D. Pa. 2005) (Baylson, J.); Booze v. Allstate, 750 A.2d 877 (Pa. Super. Ct. 2000). Plaintiffs must then establish "(1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." Colaizzi, 895 A.2d at 39.

Other judges have "read the inclusion of the term 'deceptive' in § 201-2(4)(xxi) as creating an alternative, less rigorous level of proof that falls short of actual fraud." Jones v. Aames Funding Corp., 2006 WL 2845689, at *10 (E.D. Pa. Mar. 7, 2006) (Davis, J.); see, e.g., Davis v. Mony Life Ins. Co., 2008 WL 4170250 (W.D. Pa. Sept. 2, 2008); Alberton v. Commonwealth Land Title Ins. Co., 247 F.R.D. 469 (E.D. Pa. 2008) (Robreno, J.). Under this

alternative standard, a plaintiff alleging deception under the catch-all provision must prove that he justifiably relied on the defendant's deceptive conduct and that he suffered damages as a result of reliance. Davis, 2008 WL 4170250, at *6.

Plaintiffs' claim under the UTPCPL's catch-all provision alleges that "Defendants engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding." (Am. Compl. ¶ 52(b).) In support, Plaintiffs allege that "Defendants misrepresented to Plaintiffs that the loan would be beneficial when in fact . . . Defendants knew it was not" and also that "Defendants misrepresented the characteristics or benefits of the loan." (Am. Compl. ¶ 52(d), (e).) But in identifying the person or thing that committed these acts, Plaintiffs point not to Defendant, but to Ms. Choing, allegedly an employee of the Hanson Mortgage Group. (Am. Compl. ¶ 21.)

### 2. **Agency**

As Choing is not a defendant in this lawsuit, Plaintiffs' UTPCPL claim is premised on the assumption that Choing was an agent of Countrywide and that Countrywide is therefore responsible for Choing's allegedly fraudulent or deceptive conduct. An agency relationship can be established in four ways: "(1) express authority; (2) implied authority, to do all that is proper, usual and necessary to the exercise of the authority actually granted; (3) apparent authority, as where the principal holds one out as agent by words or conduct; and (4) agency by estoppel." SEI Corp. v. Norton & Co., 631 F. Supp. 497, 501 (E.D. Pa. 1986). Express authority exists when the principal explicitly states that the agent has the authority to act on its behalf. Jones v. Van Norman, 522 A.2d 503 (Pa. 1987). Implied authority flows from the principal's grant of express authority and empowers the agent to do what is necessary to accomplish the purpose of

the agency.  Id.  Apparent authority exists when there is no express grant of authority, but a reasonable person would believe an agency relationship exists based on the agent's conduct.  Id.  Agency by estoppel is applicable where a principal intentionally or negligently leads a third party to believe the agent has the authority to act on the principal's behalf, and the third party relies on the belief.  Id.

In Marrone v. Green, the complaint did not sufficiently plead an agency relationship because it did not allege that the purported principal exerted any control over the purported agent.  2009 WL 605899, at *3 (E.D. Pa. Mar. 10, 2009) (Schiller, J.).  Even accepting as true the allegation of agency, the complaint's allegation concerning the scope of the alleged agency was self-defeating because the plaintiffs were attempting to hold the purported agent liable for failing to act outside the scope of the agency.  Id.

In Morilus v. Countrywide Home Loans, Inc., Judge Stengel held, on a motion for summary judgment, that an agency relationship was not established between the defendant lender and the mortgage broker, who sold a mortgage to the plaintiffs.  2008 WL 5377627, at *8 (E.D. Pa. Dec. 22, 2008).  Even though the lender was setting a minimum standard for business transactions, no express agency existed because the plaintiffs failed to present any facts to show how the lender "controlled" the broker.  Id. at *6.  Moreover, the broker was free to consult lenders other than the defendant.  Id. at *6 n.7; see also Hawthorne v. Am. Mortgage, Inc., 489 F. Supp. 2d 480, 482 (E.D. Pa. 2007) (finding no agency relationship between a lender and a mortgage broker even where "1) [the broker] used [the lender's] internal proprietary software, eApprove; 2) [the lender] let [the broker] serve as the primary contact person for the borrowers; 3) [the broker] was a correspondent bank that could serve as the lender itself and then place the

loans with [the lender]; and 4) on occasion, [the lender] referred to [the broker] as a 'partner.'").

Judge Stengel also concluded that no apparent agency existed between the lender and the broker in Morilus. 2008 WL 5377627, at *6. There was no agency relationship in Morilus because the broker was an intermediary between borrowers and several lenders, including the defendant. Id. The broker had no authority to control the terms of the loan, and he was free to submit the plaintiffs' loan application to lenders other than the defendant. Id. at *6-7; see also Hawthorne, 489 F. Supp. 2d at 487 (broker's ability to submit customers' loan applications to lenders other than the defendant lender belied the existence of apparent agency between the broker and the defendant).

Here, Plaintiffs allege no facts to support their assertion that Choing "act[ed] as an agent for Defendant, Countrywide . . . ." (Am. Compl. ¶ 21.) Choing is allegedly an employee of Hanson Mortgage Group, not of Countrywide. As in Marrone, Plaintiffs have not alleged that Countrywide exerted any control over either Choing or Hanson Mortgage Group. Plaintiffs' Amended Complaint states that Choing presented Plaintiffs' loan application to several prospective lenders, including Countrywide, before Countrywide approved Plaintiffs' loan. (Am. Compl. ¶ 19.) As in Morilus and Hawthorne, this allegation belies the contention that an agency relationship existed here. Plaintiffs' conclusory allegation of agency in ¶ 21 of the Amended Complaint is insufficient to support a conclusion that Choing was an agent of Countrywide and that Countrywide may be liable for her conduct. Iqbal, 129 S. Ct. at 1940.

### 3. Countrywide's Liability under the UTPCPL's Catch-all Provision

Because Plaintiffs have failed to sufficiently allege that Choing was an agent of Countrywide, any claim against Countrywide that is premised solely on Choing's conduct must

be dismissed.[5] In the words of Judge Stengel, "[m]y reasons for dismissing this claim remain the same as for all other claims based on alleged representations by Countrywide: the plaintiffs have not shown that Countrywide made any representations to them. Their response provides no particularized allegations supporting the claim. Without a representation, there was no misrepresentation." Morilus, 2008 WL 5377627, at *8, 13.

Plaintiffs also allege that "Defendants misrepresented to Plaintiffs that the loan would be beneficial when in fact it was not," but the Amended Complaint provides no factual support for the allegation that Countrywide made any such representation to Plaintiffs. (Am. Compl. ¶ 52(d).) The Amended Complaint alleges that "Plaintiffs were told" that their starting interest rate would be 4%, but it does not specify whether Choing or Countrywide conveyed this information to Plaintiffs. (Am. Compl. ¶ 23.) In fact, the factual allegations relate only to Choing. The Amended Complaint contains no factual support for the legal conclusions in ¶ 52 that Countrywide violated the UTPCPL's catch-all provision.

Plaintiffs' allegations of a UTPCPL catch-all claim is essentially no more than a

---

[5] The parties have not briefed the impact of the parol evidence rule on Plaintiffs' allegations, and the Court does not rely on the rule in dismissing the Complaint. However, it must be noted that Choing's statements are presumptively inadmissible under the parol evidence rule because Plaintiffs' written contract with Countrywide purports to represent the entire agreement between the parties. De Lage Landen Financial Services, Inc. v. Barton Nelson, Inc., 2008 WL 4791891, at *4 (E.D. Pa. Nov. 4, 2008) (Baylson, J.) (quoting Yocca v. Pittsburgh Steelers, 854 A.2d 425, 436 (Pa. 2004) ("The parol evidence rule in Pennsylvania requires that '[a]ll preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and its terms and agreements cannot be added to nor subtracted from by parol evidence.'"). Since this Court need not reach the issue because Plaintiffs' UTPCPL claim fails for other reasons, it is a factor in this Court's decision that an amendment would be futile.

restatement of the elements of the statute.  Plaintiffs cannot adequately plead that Countrywide violated the UTPCPL simply by pasting the language of the statute into their Amended Complaint.  "A formulaic recitation of the elements of a cause of action" cannot survive a 12(b)(6) motion.  Phillips, 515 F.3d at 231 (citing Twombly, 12 S. Ct. at 1959); see also Hartman v. Deutsche Bank Nat. Trust Co., 2008 WL 2996515, at *4 (E.D. Pa. Aug. 1, 2008) (quoting Twombly, 127 S. Ct. at 1959) (vague and conclusory allegations unsupported by allegations of fact—in other words, a "formulaic recitation of the elements of a cause of action"—were insufficient to state a claim under the UTPCPL's catch-all provision).[6]

      Plaintiffs' argument that "simplistic" causes of action must meet only the "no set of facts" standard from Conley v. Gibson misreads Iqbal.  (Pl.'s Response Brief at 8.)  Contrary to Plaintiffs' assertion that Twombly does not apply because this is "not a complex lawsuit for

---

[6] Although Plaintiffs do not specifically use the concept of "fraud" in their pleading, and the Court need not reach a conclusion that this is a complaint based upon allegations of fraud, averments of fraud are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). Kemezis v. Matthew, 2008 WL 5191587, at *2 (E.D. Pa. Dec. 10, 2008) (Baylson, J.).  Since the allegations in the Amended Complaint fail to meet even Rule 8(a) notice pleading standards, it is unnecessary for this Court to conduct a Rule 9(b) analysis.
      Although Twombly and Iqbal have been criticized as both ignoring the liberal concept of notice pleading and representing an unwarranted change in Supreme Court jurisprudence on the adequacy of pleadings, the Complaint in the present case is a good example of why allowing a case to proceed simply on its allegations of statutory elements, which some might equate with notice pleading, can be unfair in some cases.  The relationship between the parties in this case is based on contract.  If Plaintiffs had grounds to believe that Defendants had violated the contract, a claim for breach of contract would surely be proper.  However, Plaintiffs' claims are based solely on alleged oral representations, which Plaintiffs claim induced them to enter into the mortgage agreement.  If, as Plaintiffs allege, they did not understand the mortgage agreement, they should not have signed it or sought services of a lawyer or written clarification from Countrywide.  Allowing a claim of this nature to proceed when the terms of the written documents are clearly contrary to the Plaintiffs' allegations would not only violate Iqbal and Twombly, but other long-standing principles of federal jurisprudence.  See Kemezis, 2008 WL 5191587.

-11-

antitrust violations," Iqbal confirmed that the principles articulated in Twombly "govern[] the pleading standard 'in all civil actions and proceedings in the United States district courts.'" Iqbal, 129 S. Ct. at 1953 (quoting Fed. Rule Civ. P. 1). "[T]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements," cannot survive a motion to dismiss. Iqbal, 129 S. Ct. at 1941.

Plaintiffs' request for leave to amend will be denied because it is futile. Plaintiffs have already had the opportunity to amend, and still their Amended Complaint fails to allege any facts in support of a substantive claim against Countrywide. Plaintiffs do not state what amendments they would make that would give legitimacy to their claim. Plaintiffs failed to address the obvious inference that their claims may be barred by the parol evidence rule, and even if that rule did not apply, there is no basis in law for Countrywide to be responsible for the alleged misrepresentations of Ms. Choing.

### B. Plaintiffs' Per Se Violation Theory Is Not Supported by the Case Law

Plaintiffs assert that their UTPCPL claim is supported by what Plaintiffs claim are per se violations of two federal statutes and one state statute.[7] Plaintiffs contend that violations of the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), and the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA") are per se violations of the UTPCPL. (Am. Compl. ¶ 52(c).) Plaintiffs allege that fees they paid at closing were "undisclosed and/or non-bona fide and/or reasonable prepaid finance charges" in violation of TILA. (Am. Compl. ¶ 52(c)(i).) Plaintiffs also allege that the finance charges violated RESPA's

---

[7] As noted above, Plaintiffs withdrew their allegations of a HOEPA violation. (Pl.'s Response Brief at 6.)

fee splitting prohibition. (Am. Compl. ¶ 52(c)(ii).)

Countrywide argues that Plaintiffs cannot base their UTPCPL claim on purported violations of other consumer protection statutes. (Def.'s Mot. to Dismiss at 6-11.)

TILA, 15 U.S.C. § 1601 et seq., was enacted to protect consumers from confusing and fraudulent lending practices. Ramadan v. Chase Manhattan Corp., 156 F.3d 499, 502 (3d Cir. 1998). RESPA, 12 U.S.C. § 2601 et seq., was enacted to ensure that home buyers and sellers have access to information about "the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices." 12 U.S. C. § 2601(a). RESPA prohibits the splitting of "any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." Id. at § 2607(b). The FCEUA will be discussed in more detail below.

### 1. Per Se Violation Theory

Many judges in this District have rejected Plaintiffs' argument that TILA and RESPA violations are per se violations of the UTPCPL. See Morilus, 2008 WL 5377627, at *13; Wenglicki v. Tribeca Lending Corp., 2009 WL 2195221, at *6 (E.D. Pa. Jul. 22, 2009) (Stengel, J.); Kuenzi v. Eurosport Cycles, Inc., 2009 WL 1872599, at *5 (E.D. Pa. Jun. 30, 2009) (O'Neill, J.); Hartman v. Deutsche Bank Natl. Trust Co., 2008 WL 2996515, at *4 (E.D. Pa. Aug. 1, 2008) (Padova, J.); Christopher v. First Mutual Corp., 2008 WL 1815300, at *15 (E.D. Pa. Apr. 22, 2008) (Shapiro, J.); McMaster v. CIT Group, 2006 WL 1314379, at *10 n. 11 (E.D. Pa. May 11, 2006) (O'Neill, J.).

In Morilus and Christopher, the plaintiffs asserted UTPCPL claims and argued that TILA

and RESPA violations were per se violations of the UTPCPL.  The plaintiffs' underlying TILA and RESPA claims were time-barred.  Morilus, 2008 WL 5377627, at *13; Christopher, 2008 WL 1815300, at *15.  In both cases, the court rejected the plaintiffs' argument that UTPCPL liability could rest on TILA and RESPA violations, because accepting this argument would allow the plaintiffs to circumvent TILA's and RESPA's statutes of limitations and because the plaintiffs presented no legal authority in support of their argument.  Morilus, 2008 WL 5377627, at *13; Christopher, 2008 WL 1815300, at *15.  In Morilus, Judge Stengel observed that the plaintiffs "presented no legal authority to support their position, and the statutes of limitations for the underlying TILA and RESPA claims have run.  Allowing the plaintiffs to pursue those same claims would undermine Congress' intent to provide finality."  2008 WL 5377627, at *13.

Plaintiffs here advance the very same argument that Morilus and Christopher rejected.  Plaintiffs' Response Brief makes no attempt to address these decisions, and instead focuses its energy on attempting to show that Countrywide's conduct violated TILA, despite the fact that this was not a claim in Plaintiffs' Amended Complaint and that TILA and RESPA claims are time-barred.[8]  Judge Stengel's reasoning in Morilus is instructive here.  As in Morilus, Plaintiffs present no legal authority to support their argument, and allowing them to assert time-barred claims via the UTPCPL would allow them to circumvent congressionally mandated statutes of limitations.

Plaintiffs' argument that violations of TILA and RESPA constitute per se violations of

---

[8] As discussed below in Part III.B.3, the statute of limitations expired on Plaintiffs' potential TILA and RESPA claims prior to the initiation of this lawsuit.

the UTPCPL is therefore rejected.[9]

### 2.    The Pennsylvania FCEUA

Next, Plaintiffs argue that a violation of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA") is a per se violation of the UTCPL. The FCEUA, 73 P.S. § 2270.1 et seq., "establishes what shall be considered unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts." The FCEUA sets out prohibited debt collection practices involving communications by the creditor to the borrower. 73 P.S. § 2270.4(b). Countrywide argues that Plaintiffs cannot base their UTPCPL claim on a purported violation of the FCEUA.

Plaintiffs argue, without citation to authority, that a FCEUA violation is a per se violation of the UTPCPL. Judge Stengel also rejected this exact argument in Wenglicki v. Tribeca Lending Corp., 2009 WL 2195221, at *6 (E.D. Pa. July 22, 2009). The Wenglicki plaintiff failed to state a UTPCPL claim where the only basis for his claim was an FCEUA violation. Id. Judge Stengel recognized that, in order to state a UTPCPL claim, the plaintiff must allege "with particularity the [UTPCPL] elements necessary to support a violation . . . as to a particular Defendant." Id. (quoting Morilus, 2009 WL 1810676, at *5).

Moreover, Plaintiffs have failed to establish a FCEUA claim. In Hartman v. Deutsche Bank Natl. Trust Co., the complaint failed to make out an FCEUA claim because it did not "identify a single communication between [the defendant lender] and [the p]laintiffs, much less

---

[9] It must also be noted that Plaintiffs' counsel have simply ignored the large number of decisions quoted in the above text that reject Plaintiffs' per se legal theory, many of which are from the Eastern District of Pennsylvania. This is unacceptable advocacy. A good lawyer is expected to cite, and then attempt to distinguish or disagree with, contrary authority.

one that constituted an 'attempt to collect a debt.'" 2008 WL 2996515, at *3-4 (E.D. Pa. Aug. 1, 2008) (general allegations of "unfair or unconscionable collection methods" and of giving "a false impression of the character, extent, or legal status of the alleged debt" were insufficient to support an FCEUA claim). Here, as in Hartman, the Amended Complaint "does not identify a single communication" between Countrywide and Plaintiffs. The sole mention of the FCEUA in Plaintiffs' Amended Complaint is the bald assertion that Countrywide "failed to comply with TILA, HOEPA, RESPA, and the FCEUA, which are per se violations of the UTPCPL." (Am. Compl. ¶ 52(c).) Without pointing to any suspect debt collection practice that may be prohibited by the FCEUA, the Amended Complaint fails to make out an FCEUA claim, let alone a violation of the UTPCPL.

Plaintiffs' attempt to premise UTPCPL liability on Countrywide's alleged violation of the FCEUA is therefore rejected.

### 3. Whether Plaintiffs Should be Given Leave to Assert Claims Under TILA, RESPA, and FCEUA

The Court concludes that any amendment to allege claims under these statutes would be futile. Plaintiffs have failed to allege any facts that would support these claims for the reasons shown in the above discussion. Plaintiffs are complaining about misrepresentations made by an individual selling them the mortgage, which are remote from the type of schemes that Congress attempted to regulate under TILA and RESPA, and the schemes the Pennsylvania legislature attempted to regulate under FCEUA. Furthermore, it appears clear that the TILA and RESPA claims are untimely.

A TILA claim or a RESPA claim under § 2607 must be brought within one year of the

violation.[10]  See 15 U.S.C. § 1640(e); 12 U.S.C. § 2614; see also Solar v. Millennium Financial, Inc., 2002 WL 1019047, at *3 (E.D. Pa. May 17, 2002) (Green, S.J.); Roche v. Sparkle City Realty, 2009 WL 1674417, at *2-3 (E.D. Pa. Jun. 12, 2009) (Kauffman, J.).  The statute of limitations begins to run when the facts that would support the plaintiff's cause of action are apparent or would be apparent to a reasonable person.  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1389 (3d Cir. 1994).  Plaintiffs executed the loan on October 25, 2006.  (Am. Compl. ¶ 8.)  Because Plaintiffs did not commence an action against Countrywide until October 27, 2008, more than two years after the alleged violation, the statutes of limitations for TILA and RESPA have expired.  And, Plaintiffs have not suggested that they had any reason not to be aware of the alleged violation.

An exception to the one-year statute of limitations for these claims is the doctrine of equitable tolling.  Ramadan, 156 F.3d at 502 (equitable tolling applies to TILA claims); Marple v. Countrywide Financial Corp., 2008 U.S. Dist. LEXIS 37705 *8 (D.N.J. May 7, 2008) (applying equitable tolling to a RESPA claim).  Equitable tolling is appropriate for a TILA claim

> (1) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; (2) where the plaintiff timely asserted her rights in an improper forum; or (3) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action.

Morilus, 2008 WL 5377627, at *9 (quoting Oshiver, 38 F.3d at 1387).  For a RESPA claim to warrant equitable tolling, "mere silence or nondisclosure is not enough to trigger estoppel[;] the

---

[10] There is no statute of limitations for recoupment.  Roche v. Sparkle City Realty, 2009 WL 1674417, at *2 (E.D. Pa. Jun. 12, 2009).  However, because recoupment is a defense, and not an affirmative cause of action, Plaintiffs are not pursuing such a claim here.  Id.

-17-

Case 2:08-cv-05128-MMB   Document 32   Filed 08/12/09   Page 18 of 18

adversary must commit some affirmative independent act of concealment upon which the plaintiffs justifiably rely in order to toll the statute." Marple, 2008 U.S. Dist. LEXIS 37705, at *8 (quoting Heintz Corp. v. Electro Methods, Inc., 1995 WL 405721, at *5 (E.D. Pa. June 20, 1995)).  In Marple, the plaintiff's RESPA claim was equitably tolled because the complaint alleged an "affirmative act of independent concealment"—a false statement made by the defendant—and not "mere non-disclosure" of the violative activity.  2008 U.S. Dist. LEXIS 37705, at *8-9.

Although Plaintiffs reserve the right to assert equitable tolling, see (Am. Compl. ¶ 3), they allege no facts that would support tolling.  Plaintiffs do not allege any "extraordinary" obstacles to timely filing, nor do they allege a single "affirmative act of independent concealment" by Countrywide.  They also did not timely assert a claim in the wrong forum.  Indeed, Plaintiffs did not even make such an argument in their response to the current motion to dismiss.  Therefore, Plaintiffs are time-barred from asserting TILA or RESPA claims against Countrywide.

## IV.    CONCLUSION

For the above reasons, Plaintiffs' claims will be dismissed with prejudice.

An appropriate Order follows.

O:\CIVIL 07-08\08-5128 Garczynski v. Countrywide\Garczynski v. Countrywide - Memo MTD.wpd

-18-